NOT FOR PUBLICATION                                              [Docket No. 26]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

DARREN HARVEY,

        Plaintiff,

   v.

DEVON BROWN, et al.,

        Defendants.

Civil No. 06-1891(RMB)

**OPINION**

APPEARANCES:

Darren Harvey
#477903/981156B
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302
        Plaintiff Pro Se

Sarah Brie Campbell
Office of the New Jersey Attorney General
RJ Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
        Attorney for Defendants Devon Brown, David Parish, Jon St. Hill, and James
        Comstock

**BUMB**, United States District Judge:

**Introduction:**

     This matter comes before the Court upon a motion by Defendants, Devon Brown, David

Parish, Jon St. Hill, and James Comstock, to dismiss the Complaint or alternatively for summary

judgment.

**Factual Background:**

Plaintiff, Darren Harvey, currently an inmate at South Woods State Prison ("SWSP"), brings the above-captioned action pursuant to 42 U.S.C. § 1983, against Defendants Devon Brown, David Parish, Jon St. Hill, James Comstock, Officer Colon and Correctional Medical Services ("CMS"). Only Devon Brown, David Parish, Jon St. Hill, and James Comstock are parties to the instant motion. According to Plaintiff's Complaint, while housed in the A-Unit of Riverfront State Prison, he had an oral altercation with Officer Colon. Pl.'s Compl. at 4. Soon thereafter, Plaintiff was told to vacate his cell and moved to a different cell. Id. When Plaintiff inquired as to why he was being moved, he was allegedly told that "Lieutenant St. Hill was the one ordering all the moves and to shut-up, pack and move." Id. at 5.

Plaintiff was then placed in a cell with inmate David Mosley, who exhibited bizarre behavior such as pacing back and forth, talking in a violent manner, and, screaming into the toilet while in the cell with Plaintiff. The next morning, Plaintiff alleges that Mosley accused him of "let[ting] them in the toilet so that they could get him." Id. Later in the day, Mosley had what Plaintiff calls a "violent streak" and placed his hands around Plaintiff's head and his thumbs in Plaintiff's eyes in an attempt to "gouge" Plaintiff's eyes out. Id. at 6. Plaintiff's eyes were left bleeding and he was unable to see. When an officer came to the cell to ask what happened Plaintiff "lied to him and said [he] had gotten jabbed while playing basketball because you don't tell." Id.

Plaintiff was escorted to the medical facility and immediately taken to the hospital. Id. The emergency room flushed Plaintiff's eyes and referred him to a specialist. Plaintiff states that

by the time he was taken by CMS medical staff to see the Ophthalmologist, he was told he had a very serious infection in the right eye and had permanent damage that surgery will not correct. Id.  Plaintiff was rescheduled to see a specialist but has yet to be taken.  Id.

Plaintiff states that Mosley has a known history of violent behavior; Mosley allegedly spent 36 months in Administrative Segregation for an unprovoked attack on another inmate that involved throwing boiling oil and water causing permanent injury to his cellmate. Id. at 7. Plaintiff states that the Administration attempted to keep him from talking to the Special Investigation Department and that Lt. St. Hill told Plaintiff that "since I was a trouble-maker causing waves, it was he [Lt. St. Hill] who ordered the move into Dave Mosley's cell. [T]he only intent was for me to be scared by Mosley, [n]ot harmed." Id. Lt. St. Hill also allegedly told Plaintiff to "stop filing paperwork" regarding the incident and publicly denied knowing about Mosley's violent past. Id. at 8. Following the initial incident, Mosley allegedly threatened to kill Plaintiff. Plaintiff was eventually transferred to South Woods State Prison for ongoing medical treatment - but claims that no treatment has been provided and that requests for treatment have been ignored. Id.

Plaintiff does not assert separate enumerated counts in his Complaint but, instead, generally states that the Defendants sought to "retaliate against the Plaintiff" because he sought "Administrative Relief." Plaintiff also cites "Gross Manipulative Negligence" and "Deliberate Indifference to the safety of inmates and the willful and wanted disregard to prisoners [sic] safety, by failing to appropriately and correctly classify inmates." Id. at 9. By way of relief, Plaintiff requests sanctions against Colon and Hill and the appointment of "a mediator" to "instruct and advise with regard to security and safety needs. . . ."  Finally, Plaintiff asks for

assistance in filing criminal charges against Mosley. Id. at 10.

**Applicable Standard:**

Defendants have moved to dismiss the Complaint in accordance with Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment in accordance with Fed. R. Civ. P. 56(c). A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (internal citations omitted).

In their moving papers, Defendants seek summary judgment in the alternative and attach documentation and affidavits in support of their request. When a court considers matters outside the pleadings, it should convert the motion to a motion for summary judgment to provide the opposing party an opportunity to respond. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). When converting a 12(b)(6) motion to one for summary judgment, "all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). A court must give the parties notice of its intent to convert a defendant's motion to dismiss into a motion for summary judgment so that the plaintiff is not

subjected to "summary judgment by ambush." Jones v. Morris County Corr. Facility, 2007 U.S. Dist. LEXIS 27556, *7 (D.N.J. 2007) (quoting In re Bayside Prison Litig., 190 F. Supp. 2d 755, 760 (D.N.J. 2002)). In the instant case, this Court has not given explicit notice of an intent to convert the instant motion to one for summary judgment. See Clay v. Dept. of the Army, No. 06-2515, 2007 U.S. Dist. LEXIS 9541 (3d Cir. Apr. 26, 2007) ("if there is no hearing, it is undesirable for a district court to enter summary judgment unless in its order 'it is made clear beyond doubt that the parties must present their affidavits and counter-affidavits in addition to whatever facts appear in the pleadings, depositions, answers to interrogatories, and admissions on file.'") (quoting Rose v. Bartle, 871 F.2d 331, 341 (3d Cir. 1989)). Without said notice, the Court should not convert the motion to one for summary judgment. See generally, In re: Rockefeller Center Properties, Inc. Securities Litig., 184 F. 3d 280 (3d Cir. 1999).

 Moreover, the instant motion was filed in lieu of an answer and Plaintiff has had little to no opportunity to conduct discovery in this matter. This mitigates against a conversion of this motion. See Haylett v. Bohrer, No. 05-299, 2006 U.S. Dist. LEXIS 57463 at * 13 (W.D. Pa. Aug. 15, 2006) (declining to convert motion to one for summary judgment "[g]iven the fact that no formal discovery has as yet been conducted and considering Plaintiff's status as a pro se litigant."); Alvi v. Philadelphia Health Servs., 1999 U.S. Dist. LEXIS 12404 at *3 (E.D. Pa. Aug. 12, 1999) ("plaintiff has not had any discovery. It would be inappropriate to grant summary judgment at this stage."). In light of these notice and discovery concerns, this Court will decline to convert this motion at the present time and disregard matters outside of the pleadings. See e.g., Genna v. Lady Foot International Inc., 1986 U.S. Dist. LEXIS 30088 at *1 n. 1 (E.D. Pa. Jan 24, 1986); Fox v. Congress Fin. Corp. (In re Target Indus.), 328 B.R. 99, 115 (Bankr. D.N.J.

July 11, 2005).

While Plaintiff has failed to oppose this motion, the Third Circuit has cautioned against granting such motions as unopposed without an analysis of the merits. See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) ("this action should not have been dismissed solely on the basis of the local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in Fed. R. Civ. P. 12(b)(6)."). Thus, this Court will address Plaintiff's claims in turn, keeping in mind that "however inartfully pleaded," the "allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). "When a complaint is filed pro se, the Court will liberally construe the pleadings and will apply the applicable law, 'irrespective of whether the pro se litigant has mentioned it by name.'") (quoting Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002)) (internal citations omitted).

**Discussion:**

1) Official Capacity

As an initial matter, the Defendants have moved to dismiss Plaintiff's claims to the extent they are asserted against the New Jersey Department of Corrections ("NJDOC") Defendants in their official capacities because such actions are barred by the Eleventh Amendment. The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

Const. Amend. XI.  As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) of Title 28 United States Code require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."  In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of Section 1983.  Will v. Michigan Dept. Of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).  Thus, to the extent Plaintiff is asserting claims against Defendants in their official capacities, those claims are dismissed.

      2) Individual Capacity

This Court will turn to Plaintiff's claims to the extent they are asserted against Defendants in their individual capacities.  Plaintiff has brought claims for violations of his civil

rights pursuant to 42 U.S.C. § 1983.  When bringing an action under 42 U.S.C. § 1983, a plaintiff must satisfy a two-prong test by showing that: 1) the conduct complained of was committed by a person acting under color of state law, and 2) the conduct deprived that person of rights guaranteed by the United States Constitution.  West v. Atkins, 487 U.S. 42, 48 (1988).

*a) Inadequate Medical Care*

In his Complaint, Plaintiff alleges that CMS "has failed to provide the appropriate and necessary follow-up aftercare" resulting in "[d]eficient medical care."  Pl.'s Compl. at ¶ 10.  Plaintiff also alleges that after his transfer to SWSP, his requests for additional medical care and treatment have been ignored.  The elementary principles of the Eighth Amendment "establish[] the government's obligation to provide medical care for those whom it is punishing by incarceration."  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  To demonstrate an "unnecessary and wanton infliction of pain" an inmate must show that prison officials have acted with "deliberate indifference" and that the prisoner's injury or illness is serious.  Id. at 104; Government of the V.I. v. Martinez, 239 F.3d 293, 301 (3d Cir. 2001).

Where prison officials deny reasonable requests for medical treatment, and "such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest."  Monmouth County Correctional Institution Inmates, 834 F.2d at 346 (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)).  Additionally, where prison authorities are aware of the need for medical care and intentionally refuse to provide that care, the deliberate indifference standard is satisfied.  Id. (quoting Ancata v. Prison Health Services, Inc., 769 F.2d 700 (11th Cir. 1985)).  Also, for a medical need to be "serious" pursuant to the second prong of the Estelle test, Plaintiff must show that the need is "'one that has been

8

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Id. at 347 (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd 649 F.3d 860 (3d Cir. 1981)).

The allegations regarding deficient medical care in Plaintiff's Complaint are directed at CMS. There are no allegations made against the Defendants that are parties to this motion that would state a claim for deliberate indifference to a serious medical need. Indeed, Plaintiff's allegations that he is not being treated at South Woods State Prison do not implicate most moving Defendants, who are employed by Riverfront State Prison. Further, the allegations of deliberate indifference made for the time that Plaintiff was at Riverfront are directed towards CMS. While a pro se complaint is to be liberally construed, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citations omitted) (emphasis added). As such, Plaintiff has failed to state a claim upon which relief may be granted against the moving Defendants for inadequate medical care.[1]

    *b) Failure to Protect*

Plaintiff also alleges that the Defendants are liable because they failed to protect his safety. Pursuant to the Eight Amendment, prison officials have a duty to provide humane conditions of confinement, which includes taking "reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations omitted).

---

[1] If, however, Plaintiff intended to bring his inadequate medical care claim against the moving Defendants, but merely failed to make the proper allegations, this Court will give Plaintiff thirty (30) days from the date of this Opinion to file an Amended Complaint as to this Count only.

9

"Accordingly, the Eighth Amendment imposes a duty upon prison officials to protect prison inmates from violence at the hands of other prisoners." Day v. Fed. Bureau of Prisons, 2007 U.S. App. LEXIS 9927 *4 (3d Cir. 2007). In order to bring a successful claim for failure to protect, an inmate must allege: 1) that he is "incarcerated under conditions imposing a substantial risk of serious harm" and 2) the officials acted with deliberate indifference to an inmate's health or safety. Farmer, 511 U.S. at 834. The second factor requires "an actual subjective appreciation of a substantial risk." Day, 2007 U.S. Dist. LEXIS at * 5 (citing Farmer, 511 U.S. at 837-38).

Defendants argue that Plaintiff has failed to allege any personal involvement by Commissioner Brown, Administrator Parrish or Officer Comstock in the events leading to the altercation with Mosley. Without participation in the violation of Plaintiff's rights or actual knowledge and acquiescence therein, there can be no liability. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). However, the claims for failure to protect as alleged against against Commissioner Brown and Administrator Parrish are more properly analyzed under a failure to train and supervise theory of liability - discussed below.

As to Officer Comstock and Lt. St. Hill, Plaintiff has adequately stated a claim for failure to protect. In his Complaint, Plaintiff clearly alleges that he was placed in a cell with a prisoner who was known for his history of violent attacks following his disagreement with Officer Colon. See Pl.'s Compl at 6 (describing Mosley's history of violence against cell mates). Further, Plaintiff has alleged that Lt. St. Hill told Plaintiff that he intended for him to be "scared by Mosley" and that the "New Jersey Department of Corrections was well informed" that Mosley "has a recorded history of malicious violent behavior." Pl.'s Compl. at 7. He also alleges that

Comstock is the head of the Classification Committee and, by failing to appropriately classify Mosley, risked inmates' safety which resulted in the "malicious and violent attack" Thus, Plaintiff has adequately alleged that he was incarcerated under circumstances imposing a substantial risk of harm and that the Comstock and St. Hill acted with deliberate indifference to his safety.

    *c) Failure to Train/Supervise*

Plaintiff's allegations against Commissioner Brown and Administrator Parish are properly analyzed as claims for failure to properly train and supervise.  In their motion papers, Defendants argue that Plaintiff has failed to allege that Brown and Parrish were personally involved in the events alleged by Plaintiff.  However, in this Complaint, Plaintiff avers that Brown "failed to monitor and correct violations of security within the confines of institutions" Pl.'s Compl. at 2.  Further he alleges that Parrish "failed to maintain control over his correctional officers. . . creating an environment. . . detrimental to the safety of both staff and inmates." Pl.'s Compl. at 3.

Inadequate training may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference[.]"  City of Canton v. Harris, 489 U.S. 378, 388 (1989). In City of Canton, the Court stated:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result the violation of constitutional rights, that the policymaker of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390.  In order to succeed on this theory, however, Plaintiff most demonstrate that the deliberate conduct alleged was the "moving force" behind the injury.  See  Bd. of the County

11

Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).  The deliberate indifference standard similarly applies to the failure to supervise analysis.  See Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995).  Moreover, "a supervisor may be found individually liable under § 1983 if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Okocci v. Klein, 270 F. Supp. 2d 603, 612 (E.D. Pa. 2003).

Keeping in mind that this is a motion to dismiss and Plaintiff is proceeding pro se, this Court finds that, at this juncture, Plaintiff has adequately alleged a claim for failure to supervise and train against Defendants Brown and Parrish.  Plaintiff has alleged in his complaint that both Brown and Parrish failed to "monitory and correct" and "maintain control" thus creating an environment detrimental to inmate safety.  This failure to train and supervise allegedly resulted in an environment that facilitated the alleged violent attack.  As such, Plaintiff has set forth allegations stating that the Defendants were deliberately indifferent to the need for supervision and training and that such indifference led to his injury.

*d) Qualified Immunity*

Defendants argue that they are entitled to qualified immunity because "[Defendants] were not deliberately indifferent to [P]laintiff's health or safety [and] the law is not clearly established that housing two maximum security inmates together would amount to an Eighth Amendment violation." Defs.' Br. at 17.  Qualified immunity should be resolved at the earliest stage of litigation. Saucier v. Katz, 533 U.S. 194, 200-201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (stating that qualified immunity is "an immunity from suit rather than a mere defense to liability.").  In evaluating the qualified immunity argument, this Court must first ask whether, the facts alleged are sufficient to establish that the Defendants deprived Plaintiff of a constitutional

right. Id. at 201. If the answer is yes, the Court must next ask if such right was clearly established at the time of the events in question, i.e., in light of preexisting law - was the unlawfulness apparent. Wilson v. Layne, 526 U.S. 603, 614-15, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999). This task must be "undertaken in light of the specific context of the case." Saucier, 533 U.S. at 201.

     For the reasons discussed above, Plaintiff has adequately alleged a violation of his Eighth Amendment rights. Next, this Court must determine whether the constitutional right at issue was clearly established. While Defendants assert that the "law is not clearly established" regarding housing maximum security inmates together, it is well established that "the Eighth Amendment imposes a duty upon prison officials to protect prison inmates from violence at the hands of other prisoners." Day v. Fed. Bureau of Prisons, 2007 U.S. App. LEXIS 9927 *4 (3d Cir. 2007); see Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001) ("a court must next determine whether the right that the defendant's conduct allegedly violated was a clearly established one, about which a reasonable person would have known."). It is this right that has allegedly been violated and one which a reasonable person would have known about in light of Plaintiff's allegations that he was intentionally placed with Mosley, who had a known history of violence towards cell mates, in the hopes of "scaring" him. See e.g., Blizzard v. Quillen, 579 F. Supp. 1446, 1450 (D. Del. 1984) (denying qualified immunity where inmate transferred despite knowledge that he was "in danger as a snitch"); Hamilton v. Leavy, 2001 U.S. Dist. LEXIS 10602 at * 26 (D. Del. July 27, 2001) (discussing well settled rule that when a prison official or guard has reason to know that an inmate is in danger he must take reasonable care to provide reasonable protection from unreasonable risk of harm). Because qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986), and Plaintiff alleges that he was knowingly placed in danger as punishment, at this stage, the Court will deny Defendants' request that suit be barred via operation of qualified immunity.

  *e) Punitive Damages*

  Finally, Defendants aver that Plaintiff's claim for punitive damages must be dismissed because "the record is devoid of any facts or evidence indicating that the [D]efendants acted with an 'evil motive' or 'callous indifference.'" Defs.' Br. at 26.  In support of this argument, Defendants make repeated citations to the record - however, for the reasons discussed above, this Court has declined to convert this motion into one for summary judgment.  Because this is a motion to dismiss, and Plaintiff has set forth facts sufficient to allege that Defendants acted with callous indifference, this Court will not bar Plaintiff from seeking punitive damages at this stage; the evidence may indeed show especially egregious behavior or malice on the part of the Defendants. See Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

**Conclusion:**

  For the aforementioned reasons, Defendants' motion to dismiss will be granted only with respect to Plaintiff's claims for inadequate medical treatment against the moving Defendants.  However, Plaintiff is granted thirty days to amend his Complaint as to this claim.  Defendants' motion is denied with regard to Plaintiff's failure to protect and failure to train and supervise claims.  Defendants' motion for dismissal on qualified immunity grounds and to bar punitive

damages are denied without prejudice.  An appropriate Order will issue this date.


Dated: September 28, 2007                                         s/Renée Marie Bumb
                                                                                                           RENÉE MARIE BUMB
                                                                                                           United States District Judge