<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| DARREN HARVEY, : | |
| : | Civil No. 06-1891 (RMB/AMD) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| DEVON BROWN, et al., : | |
| : | |
| Defendants. : | |

<u>Appearances</u>:

John J. Sullivan, Esquire
Jaimee Beth Farrer, Esquire
Dechert LLP
P.O. Box 5218
Princeton, NJ 08543

    Attorneys for Plaintiff

Kyle Kamal Bradley, Esquire
Susan Marie Scott, Esquire
State of New Jersey Office of the Attorney General
25 Market Street
P.O. Box 116
Trenton, NJ 08625-0116

    Attorneys for Defendants

**BUMB**, United States District Judge:

    This matter comes before the Court upon a motion by all defendants for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a).  Plaintiff Darren Harvey (the "Plaintiff"), formerly an inmate at Riverfront State Prison,

1

brought this lawsuit, pursuant to 42 U.S.C. § 1983, against various state and prison officials (the "Defendants") for, he alleges, requiring him to share a cell with a violent inmate as retaliation for his prior insubordination, thereby bringing about an attack by the inmate that caused serious injury to Plaintiff's eyes.  Defendants now move for summary judgment on various grounds.  Because Plaintiff did not satisfy the threshold requirement of exhausting administrative remedies, however, the Court will grant the motion for summary judgment without reaching the disputed substantive bases for Defendants' motion.[1]

## BACKGROUND

Because the Court's decision turns upon narrow procedural grounds, it need not recite the underlying facts in great detail. By way of summary, Plaintiff alleges that Defendants Colon and St. Hill, correctional officers at Riverfront State Prison, transferred him to a cell occupied by inmate David Mosley, who was "known to have a dangerous propensity to commit violent acts against those with whom he roomed . . . ."  (Pl.'s Opp'n Br. 1.) Plaintiff alleges that the August 4, 2005 transfer was an act of

---

[1] The Court has received a letter from Defendants' counsel requesting a one-week extension to file their reply brief. Inexplicably, the letter was filed at 3:20 p.m. on the date that the brief was due.  Also, the letter fails to "advise the Court whether other parties have or have not consented to such request," as required by Local Civil Rule 7.1(d)(5), and fails to set forth good cause why the extension is needed.  In any event, the Court's ruling today renders this request moot.

retaliation for Plaintiff's prior questioning of Defendant Colon's authority. Before and after the transfer, Plaintiff informally requested that he be moved to a cell not occupied by Mosley. Plaintiff avers that the prison "recognizes informal grievances and allows inmates to lodge verbal complaints to corrections staff. Corrections staff are then to report complaints up the chain of command until they reach a Corrections Captain, who may order an investigation. . . . [Plaintiff] used this procedure to [seek] transfer out of Mosley's cell." (Pl.'s Opp'n Br. 11.) However, not having been moved out of Mosley's cell, on October 6, 2005, Plaintiff, while laying in his bed, was mounted, held down, and assaulted by Mosley, in what Plaintiff characterizes as a spontaneous and unprovoked attack. The assault caused serious injury to Plaintiff's eyes, as well as accompanying psychological trauma. After the attack, Plaintiff again complained that he had been threatened by Mosley; as a result, the prison finally moved him out of Mosley's cell. Plaintiff avers that the prison and the New Jersey Department of Corrections lack policies to protect inmates from violence by those with dangerous propensities.

 Importantly, it is not disputed that Plaintiff never pursued a formal grievance following the attack by Mosley.[2] (Def.s'

---

[2] By this, the Court refers to the institutional grievance procedure at Riverfront State Prison. See Concepcion v. Morton, 306 F.3d 1347, 1348-49 (3d Cir. 2002) ("[T]he PLRA's exhaustion

Stat. Mat. Fcts. ¶¶ 21-24; Pl.'s Resp. Stat. Mat. Fcts. ¶¶ 21-24.) The only remedy Plaintiff ever sought was, by way of verbal complaints, transfer out of Mosley's cell. (Id.)[3]

---

requirement applies to a grievance procedure described in an inmate handbook . . . ."). Plaintiff conceded in his deposition that he knew about the formal grievance procedure, but had not used it in this instance:

> Q. Are you aware of the Riverfront State Prison grievance procedures for submitting complaints or concerns to the administration?
> A. Correct.
> Q. How do you know about the procedure?
> A. I've used that procedure before. . . .
> Q. Is it a particular form that has to be used?
> A. Correct. Right. . . .
> Q. Okay. Did you file any administrative remedy forms regarding your housing assignment with inmate Mosley?
> A. No.
> Q. Okay. Did you ever request a cell transfer through one of these forms?
> A. No.
> Q. Did you file any administrative remedy forms regarding your concerns for your safety if you remained in the cell with inmate Mosley?
> A. No. . . .
> Q. Okay. Do you know if you filed an administrative remedy form regarding your allegation that [Defendant] St. Hill failed to protect you?
> A. I'm not sure. . . .
> Q. Did you ever file an administrative remedy form against [Defendant] Colon?
> A. No. . . .
> Q. . . . Did you file any administrative remedy form regarding your allegations that officers at Riverfront State Prison were using scare tactics?
> A. No.

(Pl.'s Dep., June 18, 2009, 161:12-162:2, 166:12-168:16 [Def.s' Ex. F].)

[3] Plaintiff initially named Correctional Medical Services, Inc. as a defendant in this action for what he alleged were

**LEGAL STANDARD**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)). However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

---

failures to provide adequate medical care, as required by the Eighth Amendment. The Court dismissed CMS without prejudice for Plaintiff's failure to plead facts establishing a "custom or policy" bringing about the constitutional violation alleged, as required by Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978). Plaintiff never sought leave to amend his complaint to cure the deficient pleading. Thus, Plaintiff apparently opted to proceed only against the state and prison defendants.

a genuine issue for trial.'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C.A. § 1997e(a). "[A]ctions arising under this clause relate to the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." Booth v. Churner, 206 F.3d 289, 294 (3d Cir. 2000), aff'd 532 U.S. 731 (2001). Because Plaintiff's main allegation is that he was confined in a dangerous place -- that is, in a cell also occupied by an inmate with a violent propensity -- he was required to exhaust his administrative remedies before bringing this action.[4] See Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005) (applying the procedural exhaustion requirement to a near-identical set of facts).

Plaintiff did not pursue a formal grievance to complain that he had been housed, intentionally, with a dangerous cellmate. (Pl.'s Resp. Stat. Mat. Fcts. ¶¶ 21-24.) Plaintiff nonetheless argues that his informal complaints to corrections officers

---

[4] Plaintiff does not dispute that this case is subject to the procedural exhaustion requirement.

6

satisfy the exhaustion requirement, because the informal complaints were ultimately successful: Plaintiff requested that he be transferred to a different cell, and ultimately he was so transferred.

Procedural exhaustion demands more, however. First, "[i]t is clear that for the exhaustion requirement to be satisfied, the inmate must utilize <u>all available procedures for review</u> under the prison's grievance system." Michael B. Mushlin, <u>Rights of Prisoners</u> § 17:22 at 615 (4th ed. 2009) (emphasis added) (citing, <u>inter alia</u>, <u>Neal v. Goord</u>, 267 F.3d 116, 122 (2d Cir. 2001); <u>Johnson v. Jones</u>, 340 F.3d 624, 627-28 (8th Cir. 2005); <u>Kaiser v. Bailey</u>, No. 01-6151, 2003 WL 21500339, *4-6 (D.N.J. July 1, 2003) (Irenas)). A prisoner does not satisfy the exhaustion requirement by complaining verbally in lieu of bringing a formal grievance under a prison's established grievance procedure.

Plaintiff maintains, however, that no formal grievance was necessary, because his informal complaints succeeded in attaining the relief he desired, namely, being transferred to a different cell. This is a confounding proposition, since Plaintiff complains by this action not of the prison's persisting refusal to transfer him, but of Defendants' misconduct in intentionally placing him with a cellmate known to be violent. Plaintiff failed to exhaust remedies available to redress this particular grievance.

7

This is an important distinction.  "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection . . . ."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952)).  Plaintiff asks this Court to pass upon the conduct of corrections officers who, he alleges, exposed him to violence, when Plaintiff has not given the Department of Corrections an opportunity to pass upon the officers' conduct.[5]

Plaintiff might have argued that filing a retrospective grievance for the misconduct of Defendants Colon and St. Hill would have been futile, since the internal grievance procedure does not permit retrospective damages awards.  However, the Supreme Court has foreclosed this avenue of argumentation.  In Booth v. Churner, the Court held that procedural exhaustion is required even when a prisoner cannot receive the relief he desires, such as damages.  532 U.S. 731, 738-40 (2001).  Good

---

[5] The Third Circuit has held that a prisoner need not file a formal grievance when the merits of his claim have been fully considered through informal administrative channels.  See Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (holding that prisoners need not "jump through any further administrative hoops to get the same answer").  But see John Boston, The Prison Litigation Reform Act:  Considerations in Individual Litigation, 219 PLI/Crim 307, § III(E) (2009) (suggesting that Camp is no longer good law after Woodford v. Ngo).  Of course, it is not accurate to say that the prison's ultimate transfer of Plaintiff vindicated his claims that Defendants Colon and St. Marks intentionally put him in jeopardy, since the prison was never called upon to consider that particular claim.

reasons underlie the requirement that a prisoner exhaust available remedies even when they do not allow the relief he seeks:

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures. Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration.

Woodford v. Ngo, 548 U.S. 81, 88 (2006) (internal citations omitted); see also John W. Palmer, Constitutional Rights of Prisoners, § 13.3.3.1 at 400-01 (8th ed. 2006) ("[Exhaustion] reduces the quantity of prisoner suits and improves the quality of the suits that are filed . . . .").

This case provides a near-perfect analogue to the Second Circuit cases Ruggiero v. County of Orange, 467 F.3d 170 (2d Cir. 2006), and Braham v. Clancy, 425 F.3d 177 (2d Cir. 2005). In Ruggiero, a prisoner sued for excessive force after having successfully obtained a prison-transfer by reporting the underlying incident to investigating officers. There, the prisoner-plaintiff made the same argument propounded by Plaintiff here: He should be excused from exhausting the prison's formal

9

grievance procedure because he obtained, through informal complaints, the very relief he sought (namely, the transfer). Similarly, in Braham, a prisoner was assaulted by his cellmate after repeatedly requesting a cell-transfer. Like Plaintiff here, the Braham prisoner-plaintiff argued that because he ultimately obtained the relief he desired -- namely, a cell-transfer -- he had no remaining available administrative remedies to exhaust. In both cases, the Second Circuit rejected the prisoner-plaintiff's argument:

> Braham did not attempt to file a formal grievance complaining that prison officials had failed to protect him from [his violent cellmate]. Here, . . . had he done so, prison authorities could have taken some action. For example, they could have pursued the remedial measures authorized by Directive 9.6, including "[d]evelop[ing] . . . policies and procedures pertaining to the grievance" or disciplining the relevant officers. While the grievance could not have resulted in money damages, other redress was available. We disagree with Braham's contention that, after the cell change, the possibility of relief no longer existed.

Braham, 425 F.3d at 183.

> [S]o long as some remedy remains available, failure to exhaust is not excused. Despite his separation from the officers who allegedly mistreated him, a formal grievance might have resulted in developing policies and procedures pertaining to the grievance or disciplining the relevant officers. Thus, Ruggiero's [prison-]transfer . . . did not render all administrative remedies unavailable . . . .

Ruggiero, 467 F.3d at 177 (internal citations omitted).

The authorities cited by Plaintiff provide little support for his view. Plaintiff cites Concepcion v. Morton, 306 F.3d

10

1347, 1355 (3d Cir. 2002), for the misleading proposition that "grievance procedures not formally adopted through regulations . . . can be considered an 'administrative remedy' within the scope of the PLRA's exhaustion requirement."  (Pl.'s Opp'n Br. 34.)  However, the administrative remedies at issue in Concepcion, although informal, were "established by the prison administrators of the NJSP and published in the Department of Corrections Inmate Handbook."  306 F.3d at 1352.  Furthermore, Concepcion does not stand for the proposition that prisoners may employ informal remedies in lieu of an established grievance procedure; rather, Concepcion held that a prisoner-plaintiff had failed to exhaust his remedies by not employing the available informal channel.

   Plaintiff further cites a number of Second Circuit authorities, which, he says, stand for the proposition that "an inmate need not continue to lodge complaints once his grievance has been addressed."  (Pl.'s Opp'n Br. 35-36.)  However, as previously discussed, the Second Circuit has roundly rejected the argument that Plaintiff now propounds.  See Ruggiero, 467 F.3d at 177; Braham, 425 F.3d at 183.  Of course, Plaintiff's actual grievance -- that he was put in jeopardy by vindictive corrections officers -- has never been heard, no less addressed, by prison officials.  Thus, even if these Second Circuit authorities stood for the proposition for which Plaintiff cites them, they would not support a waiver of the exhaustion

requirement in this case.

## CONCLUSION

Because Plaintiff failed to exhaust administrative remedies, summary judgment may be granted to Defendant without reaching the disputed substantive bases for the motion.  An accompanying Order will issue herewith.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge
Dated: January 25, 2010